**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-2581-17T2

J.Z.,[1]

     Plaintiff-Appellant,

v.

E.R. and F.M.,

     Defendants,

and

M.V.,

     Defendant-Respondent.

_____

     Argued December 5, 2018 – Decided January 15, 2019

     Before Judges Koblitz, Ostrer, and Mayer.

     On appeal from Superior Court of New Jersey, Law Division, Bergen County, Docket No. L-3428-16.

---

[1] We refer to the parties by their initials to protect their privacy and because the matter includes details regarding a domestic violence victim who is not civilly liable.

Sheri A. Breen argued the cause for appellant (Law Offices of Rosemarie Arnold, attorneys; Sheri A. Breen, of counsel and on the briefs; William R. Stoltz, on the briefs).

Kevin F. Colquhoun argued the cause for respondent (Colquhoun & Colquhoun, PA, attorneys; Kevin F. Colquhoun and Moira E. Colquhoun, on the brief).

PER CURIAM

Plaintiff J.Z. appeals from an order granting summary judgment in favor of defendant M.V. and an order denying his motion for reconsideration.[2] We affirm.

Plaintiff had a dating relationship with defendant that lasted several months. Plaintiff would spend the night at defendant's house at least four evenings a week. Defendant also maintained a relationship with defendant E.R.,[3] including occasional dinners and intimate relations. Although E.R. moved out of defendant's home in 2009, he did work around defendant's house, including yard maintenance and home repairs. E.R. allegedly had a key to

---

[2] On appeal, plaintiff fails to address the denial of his reconsideration motion. Issues not briefed on appeal are deemed waived. Gormley v. Wood-El, 218 N.J. 72, 95 n.8 (2014).

[3] E.R. is the father of defendant's youngest child. However, E.R. and defendant were never married.

defendant's home.[4]  However, E.R. knew defendant kept her exterior door unlocked so her two older children could come and go from the house.

On the afternoon of April 18, 2015, E.R. was working at defendant's home. According to E.R., he spoke to defendant about renewing a committed relationship and the possibility of reuniting.  E.R. claimed he made a dinner plan with defendant for that evening to discuss reconciling.

Unbeknownst to E.R., defendant had dinner plans with plaintiff that evening.  Defendant never telephoned E.R. to either confirm or cancel their dinner plan.  E.R. presumed defendant had forgotten their plan and was at her house watching television.

After plaintiff and defendant had dinner that evening, they returned to defendant's house around 11:00 p.m.  Plaintiff and defendant had sexual relations and retired for the night.

Because E.R. had not heard from defendant about meeting for dinner, he decided to go to defendant's home to discuss their future.  When he arrived after midnight, E.R. saw plaintiff's car in the driveway, knew plaintiff was in defendant's house, and suspected plaintiff and defendant were having sexual

---

[4]  Defendant denies giving E.R. a key to the new door locks after he moved out of the house.

relations. Knowing defendant kept the door to her home unlocked, E.R. let himself into the house. Before actually entering, E.R. texted and telephoned defendant to tell her he was downstairs and was coming into the house.

Defendant quickly dressed and told plaintiff to stay in the bedroom. However, before defendant was able to exit the bedroom, E.R. opened the bedroom door and entered the room. Plaintiff was in defendant's bed when E.R. entered the room. Defendant told E.R. to leave. E.R. refused to leave and insisted on speaking to plaintiff regarding his relationship with defendant. E.R. was intent on advising plaintiff that defendant was having sexual relations with both men and misleading them.

A confrontation between E.R. and defendant developed. E.R. yelled at and struck defendant, causing her to fall to the floor. Plaintiff attempted to protect defendant by interceding in the dispute. E.R. grabbed plaintiff and the two men wrestled. E.R. shoved plaintiff, who fell on a piece of furniture, resulting in plaintiff's loss of his right eye.

When defendant and E.R. lived together, the couple argued about finances, but never had any physical altercations. Years before the incident between E.R. and plaintiff, defendant called the police after a heated argument

with E.R. and obtained a temporary restraining order (TRO) against him. Defendant ultimately dismissed the TRO.[5]

There was no evidence of any violent behavior by E.R. toward plaintiff prior to April 18, 2015. E.R. had met plaintiff on at least twenty different occasions before that evening and had seen plaintiff in defendant's home many times. E.R. also knew plaintiff stayed at defendant's house several evenings per week. While plaintiff and defendant were dating, E.R. never displayed any anger or animosity toward plaintiff.

Plaintiff filed a personal injury action against defendant.[6] After discovery, defendant moved for summary judgment. The judge granted defendant's motion, finding defendant did not owe a duty to warn or protect plaintiff from E.R. The judge found defendant had no duty to control E.R.'s actions that night despite the fact defendant may have known E.R. could enter the house because she always left the front door unlocked. The judge concluded defendant had no reasonable expectation E.R. would enter her bedroom, without permission, start a fight with her, or anticipate plaintiff would attempt to protect her from E.R.

---

[5] The record does not indicate the predicate act for the issuance of the TRO.

[6] Plaintiff settled his claim against E.R. Defendant F.M., who owned the home, filed a motion for summary judgment. Plaintiff did not oppose that motion and F.M. was granted summary judgment.

A-2581-17T2

Plaintiff filed a motion for reconsideration, which the judge denied. The judge concluded plaintiff had not argued a claim under traditional premises liability based on a dangerous condition. Plaintiff was unable to advance any legal basis for his claim that defendant owed a duty to protect him against a criminal assault by E.R. The judge determined plaintiff commingled the imposition of a duty with a breach of duty based on foreseeability. Having conducted a full duty analysis, the judge relied on her prior ruling, finding no duty was owed to plaintiff after considering the facts in the light most favorable to him.

On appeal, plaintiff contends the judge erred in finding defendant owed no duty to plaintiff. Plaintiff argues the facts in this case presented a "perfect storm" and defendant owed him a reasonable duty of care under the circumstances. Plaintiff specifically asserts defendant owed a duty to exercise care for his safety arising from her deceitful relationship with E.R. while she was having intimate relations with plaintiff.

We review a "trial court's grant of summary judgment de novo under the same standard as the trial court." Templo Fuente De Vida Corp. v. Nat'l Union Fire Ins. Co. of Pittsburgh, 224 N.J. 189, 199 (2016); see also R. 4:46-2(c). "When no issue of fact exists, and only a question of law remains, [a reviewing

court] affords no special deference to the legal determinations of the trial court." Ibid.

"Premises liability is a subset of general negligence law." Peguero v. Tau Kappa Epsilon Local Chapter, 439 N.J. Super. 77, 88 (App. Div. 2015). To prevail on a negligence claim, "a plaintiff must establish four elements: '(1) a duty of care, (2) a breach of that duty, (3) proximate cause, and (4) actual damages.'" Townsend v. Pierre, 221 N.J. 36, 51 (2015) (quoting Polzo v. Cty. of Essex, 196 N.J. 569, 584 (2008)).

Whether a defendant owes a duty of care to another is a question of law to be determined by the trial court. Carvalho v. Toll Bros. & Developers, 143 N.J. 565, 572 (1996). Courts must analyze a defendant's duty of care to an individual based on the totality of the circumstances, and considerations of public policy and fairness. Hopkins v. Fox & Lazo Realtors, 132 N.J. 426, 439 (1993). See also Acuna v. Turkish, 192 N.J. 399, 414 (2007).

There are four factors that must be analyzed when determining whether an individual owes a duty of care toward another: "the relationship of the parties[;] the nature of the attendant risk[;] the opportunity and ability to exercise care[;]" and public policy considerations. Hopkins, 132 N.J. at 439. This "analysis is both very fact-specific and principled; it must lead to solutions

7

that properly and fairly resolve the specific case and generate intelligible and sensible rules to govern future conduct." Ibid. Whether or not a duty should be imposed in a particular situation "is a question of fairness and public policy. Foreseeability of injury to another is important, but not dispositive. Fairness, not foreseeability alone, is the test." Kuzmicz v. Ivy Hill Park Apts., 147 N.J. 510, 515 (1997) (citations omitted). Imposing a duty of care "based on foreseeability alone could result in virtually unbounded liability . . . ." Estate of Desir ex rel. Estiverne v. Vertus, 214 N.J. 303, 319 (2013).

While acknowledging the four-part test for determining a duty of care, our Supreme Court has "carefully refrained from treating questions of duty in a conclusory fashion, recognizing that '[w]hether a duty exists is ultimately a question of fairness.'" Id. at 322 (alteration in original) (quoting Weinberg v. Dinger, 106 N.J. 469, 485 (1987)). In analyzing whether to impose a duty of care, courts must proceed with caution because any resolution of the duty analysis will apply not only in the subject case, but to all cases in the future. Hopkins, 132 N.J. at 439. In Desir, the Court wrote:

> [T]he function of the common law is not to achieve a result in a particular case, but to establish generally applicable rules to govern societal behaviors. Craft a rule that is inherently fact-specific and we risk creating an outcome that reaches only the particular circumstances and the parties before the Court . . . ;

8

create a broadly worded duty and we run the risk of unintentionally imposing liability in situations far beyond the parameters we now face.

[Desir, 214 N.J. at 323.]

Plaintiff seeks a fact-specific duty of care, arguing the matter arises from "the perfect storm."[7] Plaintiff asserts the facts in this case support a determination that it was foreseeable E.R. would enter defendant's bedroom, confront defendant while she was with plaintiff, assault defendant because she had relations with the two men, and plaintiff would be injured attempting to stop E.R.'s attack of defendant. However, plaintiff fails to support his argument with evidence, such as any history of violence on the part of E.R. or prior confrontations between defendant and E.R., regarding her intimate relations with other men.

In analyzing the duty factors under Hopkins, there was no relationship between plaintiff and E.R. The fact that defendant was involved intimately with both plaintiff and E.R., and may have been deceitful to both men, does not create a relationship between plaintiff and E.R. Nor could defendant have foreseen an attendant risk plaintiff would attempt to protect her from E.R.'s assault. Similarly, the ability and opportunity to exercise care in this case is unclear. Is

---

[7] Plaintiff admits this case presents a "concededly unusual scenario."

A-2581-17T2

it that defendant should not have engaged in a sexual relationship with two men simultaneously? Is it that defendant should have locked the doors to her home? Or, should defendant, who was being assaulted by E.R., have instructed plaintiff to leave the house? The possibilities related to defendant's ability and opportunity to exercise care in this case are so varied "as to make identification of the duty impossible." Id. at 325. Nor is there any broad public interest identified in this case.

Nothing in this record supports a claim defendant either took action or failed to take action that resulted in plaintiff's injury. Plaintiff suffered a grievous injury. Yet, analyzing the events under the totality of the circumstances does not compel the imposition of a new or expanded duty of care.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-2581-17T2